Argued and submitted September 18, 1984, affirmed September 9, reconsideration denied March 8, petition for review allowed April 30, 1985 (299 Or 118)
See 300 Or 34, 706 P2d 556 (1985)

MERRILL,
*Petitioner,*

*v.*

BOARD OF ARCHITECT EXAMINERS
OF THE STATE OF OREGON,
*Respondent.*

(CA A30600)

693 P2d 1317

Kent Hickam, Albany, argued the cause and submitted the brief for petitioner.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Joseph, Chief Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Petitioner seeks review of an order of the Board of Architect Examiners that assessed a civil penalty against him of $1,000 for practicing architecture without a license.[1] We affirm.

The Board's notice charged petitioner with "practicing contrary to the provisions of ORS 671.020(1) and (2)"[2] by

"[p]reparing the construction documents for a classroom addition to the Hamilton Creek School. This is an addition of approximately 1,176 square feet to an existing structure of 21,160 square feet."

The Board's order was based on its findings of fact made after hearing:

### "FINDINGS OF FACT

"1.     Respondent [Merrill] is neither licensed as an architect under ORS ch 671 or as an engineer under ORS ch 672. He is or has been a self-employed 'building designer.' Designing is not a licensed profession, and a designer's activities are not subject to professional regulation.

"2.     Sometime prior to May of 1982 the Hamilton Creek School District No. 33C, Lebanon, Oregon (the 'school'),

---

[1] ORS 671.010(5) defines the "practice of architecture" as including

"any one or combination of the following practices by a person: The planning, designing or supervision of the erection, enlargement or alteration of any building or of any appurtenance thereto other than exempted buildings. 'Practice of architecture' does not include any contractor or his duly appointed superintendent or foreman directing the work of erection, enlargement or alteration of any building or any appurtenance thereto, under the supervision of a registered architect or registered professional engineer, as provided by ORS 671.010 to 671.220."

[2] ORS 671.020(1) and (2) provide:

"(1)  In order to safeguard life, health and property and to eliminate unnecessary loss and waste in this state, no person shall practice the profession of architecture or assume or use the title of architect, or any title, sign, cards or device indicating, or tending to indicate, that such person is practicing architecture or is an architect, or represent in any manner that such person is an architect, without first qualifying before the board and obtaining a certificate of registration as provided by ORS 671.010 to 671.220.

"(2)  No person shall practice or attempt to practice the profession of architecture, or assume the title of 'architect,' or use in connection with the business of such person any words, letters or figures indicating the title 'architect' without first complying with ORS 671.010 to 671.220."

began the process of planning for the construction of a classroom addition to the school.

"3.　The school Administrator spoke with several architectural firms regarding the proposed addition. Upon the recommendation of another school official, respondent was also contacted by the Administrator. The Administrator, apparently based on cost factors, decided to recommend the employment of respondent to the School Board.

"* * * * *

"5.　Sometime after May 17, 1982, respondent contacted Joseph Thaler, a registered professional engineer. Thaler was licensed in the branch of engineering known as mechanical engineering. OAR 820-10-450(1)(i). He was not licensed as a structural engineer. OAR 820-10-450(1)(o). Merrill and Thaler have had some form of working relationship for approximately 10 years. Thaler at the time of this hearing did not have steady employment. * * *

"6.　The exact relationship between the School Board, Merrill, and Thaler and to each other is blurred. The School Board did not enter into a written contract with Merrill or Thaler. Merrill and Thaler did not enter into a written agreement with each other. It is further not clear if Merrill was to hire Thaler for the School Board or if Thaler was employed by Merrill, as Merrill's employe or Merrill's agent.

"7.　While counsel for Merrill at the time of requesting a hearing claimed that Merrill was Thaler's employe, the claim subsequently evaporated. Merrill was not an employe of Thaler. Merrill was an independent contractor. * * *

"8.　Merrill subsequently prepared plans and specifications (the construction documents) for the classroom addition at the school. The proposed cutting of a doorway in the existing building further constituted a structural change, since an additional load would be placed on a wall. * * *

"9.　Sometime after Merrill prepared the plans and specifications (construction documents) Thaler reviewed them, made some calculations and put his engineer's stamp on the plans and specifications.

"10.　Merrill was not a subordinate or employe of Thaler. Thaler neither controlled nor had the right to control Merrill's activities. To the contrary, Thaler was either Merrill's employe or subordinate, or both individuals had a relationship incapable of legal description but foreign to employe-subordinate status.

"* * * * *

"13.   Thaler did not keep detailed time records to show when he worked on the project or supervised Merrill. Thaler did not supervise the day-to-day on-site construction of the project. Merrill supervised much of the construction. Thaler did not make any initial decisions regarding the design of the project nor was he involved in the project from its inception. This task was performed by Merrill. Merrill prepared the plans and specifications (construction documents) for the addition and generally supervised most of its construction. Thaler did not have responsible charge of the project (ORS 672.002(8)(a)). Responsible charge was shared equally with Merrill.

"* * * * *

"15.   Merrill planned and designed the enlargement and alteration of the school's building addition. While Merrill was not charged by this Board with 'supervising' the erection, enlargement or alteration of the building, it is clear he had the right of such supervision and in fact exercised supervision during construction. This right of supervision and exercise thereof shows he was not an employe or subordinate of Thaler, but independent of his control. To this extent, it is relevant to this proceeding.

"16.   Merrill was not a contractor, or a duly approved contractor's superintendent or foreman under the supervision of a registered architect or registered professional engineer (ORS 671.015(5)).

"* * * * *

"18.   The signature and stamp of a registered professional engineer on plans and specifications does not preclude this Board from determining whether in fact such plans and specifications were prepared under the direct supervision of such engineer. The plans and specifications prepared by Merrill, although bearing Thaler's stamp, were not prepared under his direct supervision (ORS 672.020(2)).

"ULTIMATE FINDINGS OF FACT

"1.   Merrill was neither an employe or subordinate of Thaler.

"2.   Merrill prepared plans and specifications (construction documents) constituting the planning and designing of the classroom addition to the school."

■ ■   Petitioner assigns as errors that the Board (1)

exceeded its authority under ORS ch 671 and (2) made findings of fact that are not supported by substantial evidence and are legally inadequate. After reviewing the record, we find that the Board acted within its authority, *see* ORS 671.220(1),[3] and that its findings of fact are supported by substantial evidence, ORS 183.482(8)(c), and are sufficient to support its order.[4]

Affirmed.

---

[3] ORS 671.220(1) provides in part:

"Any person who violates any provision of ORS 671.010 to 671.220 or any rule promulgated thereunder shall forfeit and pay to the State Board of Architect Examiners a civil penalty in an amount determined by the board of not more than $1,000 for each offense."

[4] ORS 672.020(2) provides:

"Each registered professional engineer shall, upon registration, obtain a seal of the design authorized by the board, bearing the name of the registrant, date of registration, number of certificate, and the legend 'registered professional engineer.' All final drawings, specifications, designs, reports, maps and plans issued by a registrant, shall be stamped and signed by the registrant. The signature and stamp of a registrant constitute a certification that the document was prepared by him or under his direct supervision."

OAR 820-10-010(11) defines the term "under direct supervision":

" 'Under direct supervision' shall be construed to mean that the engineer * * * providing such supervision shall have made the decisions on technical matters of policy and design and shall have exercised his professional judgment in all engineering * * * matters that are embodied in the plans, design, specifications, or other documents involved in the work. By applying his seal to the final documents, he accepts responsibility thereof."